IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MLDX INVESTMENTS, LLC, MLDX CAPITAL, INC., MARK CARUSO, JUDY CARUSO, PHILLIP RASMUSSEN, LINDA RASMUSSEN and RASMUSSEN INVESTMENTS X, LLC,<br><br>        Plaintiffs,<br><br>vs.<br><br>DAVID PARSE, TODD CLENDENING, and CRAIG BRUBAKER,<br><br>        Defendants. | ORDER DENYING MOTION TO COMPEL ARBITRATION AND GRANTING MOTION TO STAY PROCEEDINGS<br><br><br><br><br><br><br><br>Case No. 2:06-CV-00121 PGC |

Plaintiffs have filed a complaint alleging that defendants David Parse, Todd Clendening, and Craig Brubaker (referred to collectively as Parse) defrauded them into participating in investment strategies involving foreign exchange digital option contracts offered by Parse. Pending before the court is Parse's motion to compel arbitration of the claims asserted in the plaintiffs' complaint and to stay proceedings.  In his motion, Parse relies on executed Account Agreements containing broad arbitration clauses.  Parse also seeks to compel arbitration by way

of both the Federal Arbitration Act[1] and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.[2]

Five days after Parse's motion to compel arbitration was filed in this court, plaintiffs' counsel initiated a class action suit on essentially the same facts in the Southern District of New York. If a class is certified in that case – *Kissel v. Deutsche Bank AG*[3] – it would include the plaintiffs in this action.

In light of the now-pending class action suit, the court GRANTS Parse's motion to stay proceedings [#10] and DENIES the motion to compel arbitration without prejudice as premature [#7]. Plaintiffs are ordered to submit a report to this court within fourteen days of any decision by the Southern District of New York to certify or not certify the class in *Kissell*. At that time, plaintiffs are required to inform the court of their intentions to proceed in this case. If a class is certified in *Kissell,* plaintiffs must determine whether to proceed in this court or to proceed as members of the class in *Kissell*. If the plaintiffs choose to proceed in this court, the court will at that time GRANT Parse's motion to compel arbitration here [#7]. If, however, the plaintiffs choose to proceed as members of the class in *Kissell*, this action will be dismissed without prejudice.

## BACKGROUND

For the purposes of these motions, the court finds the following relevant facts. David

---

[1] 9 U.S.C. § 1 *et seq*.

[2] 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958).

[3] No. 06 Civ. 2045 (S.D.N.Y. filed March 15, 2006).

Parse and the other defendants are all employees, agents, or representatives of Deutsche Bank AG and/or Deutsche Bank Securities d/b/a Deutsche Bank Alex. Brown. Deutsche Bank "does business in major financial and banking markets in Germany, Europe and the rest of the world . . . and claims to have a leading position in international foreign exchange, fixed-income and equities trading."[4] Deutsche Bank Alex Brown is a division of Deutsche Bank Securities, which is a wholly owned subsidiary of Deutsche Bank AG.

The plaintiffs allege that they were defrauded in participating into a complex tax avoidance strategy involving foreign exchange digital option contracts. In brief, the strategy required the plaintiffs to purchase and write options and then transfer these options to either a partnership or limited liability company. The basis of the transferor's partnership interest would be increased by the cost of the purchased options, but would not be reduced by the transferor's obligation with regard to the options actually written. The contracts generally used a currency pair (such as the Japanese Yen versus the U.S. Dollar, the Euro versus the U.S. Dollar, or the Canadian Dollar versus the U.S. Dollar) as a spot rate to trigger a payoff with respect to the digital options. Plaintiffs essentially allege that Parse structured the contracts fraudulently to ensure exorbitant fees to Parse and Deutsche Bank.

The plaintiffs all signed an Account Agreement with DB Alex. Brown.[5] The agreements state that DB Alex. Brown LLC is a "subsidiary of Deutsche Bank AG" and that "each of

---

[4] Complaint, at ¶¶ 13-14.

[5] *See Aff. of Laurie Edelstien in Sup. of Def's Mot. to Compel Arbit.*, Docket No. 9, at Exhibits 1-3 (Account Agreements).

Deutsche Bank and its affiliates is a separately incorporated legal entity."[6] The Account Agreement also applies to "DB Alex. Brown, its subsidiaries, affiliates, officers, directors, agents and employees."[7]

Paragraph 19 of the Account Agreement contains an arbitration clause.

> I agree to arbitrate with you any controversies which may arise, whether or not based on events occurring prior to the date or this agreement, including any controversy arising out of or relating to any account with you, to the construction, performance or breach of any agreement with you, or to transactions with or through you, only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc., at my election.
> . . .
> Neither you or I waive any right to seek equitable relief pending arbitration. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the punitive class action until (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute waiver or any rights under this agreement except to the extent state herein.[8]

The Agreement also states in all capital letters directly above the signature line "THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 19."[9] The plaintiffs do not dispute that they signed these Account Agreements.

On March 10, 2006, Parse filed a motion to compel arbitration [#7] and stay proceedings [#10]. He argued that the Convention on the Recognition and Enforcement of Foreign Arbitral

---

[6] *Id*. Ex. 1 at ¶ 0.

[7] *Id*.

[8] *Id*. Ex. 1 at ¶ 19.

[9] *Id*. at ¶ 22.

Awards[10] requires the arbitration of the plaintiffs' claims.  Alternatively, he argued that the court should still enforce the Account Agreement's arbitration provisions in accordance with the Federal Arbitration Act (FAA).   Plaintiffs responded that the Convention does not apply to require arbitration and that the Account Agreement's arbitration clause is not valid or enforceable for various reasons.

One additional wrinkle to these facts is important.  On March 15, 2006, five days *after* Parse moved to compel arbitration, plaintiffs' counsel filed a class action complaint in the Southern District of New York.  The complaint alleges numerous claims which appear to be virtually identical to the claims asserted in the complaint before this court.  The plaintiffs here are members of this putative class.

## DISCUSSION

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.  The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."[11]  "Motions to compel arbitration are governed by 9 U.S.C. § 4."[12]  Generally, the FAA strongly favors arbitration for dispute resolution, but the "presumption of arbitrability falls away" once "the dispute is [over] whether there is a valid and enforceable

---

[10] 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958).

[11] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

[12] *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003).

arbitration agreement in the first place."[13]

Even though the Account Agreement which includes the arbitration clause was between DB Alex. Brown and the plaintiffs, Parse himself seeks to enforce the arbitration clause. In *Gibson v. Wal-Mart Stores, Inc.*,[14] the Tenth Circuit held that a non-signatory could enforce an arbitration clause if he was a third-party beneficiary of the agreement. Of course, the intent of the parties to that agreement is important to consider, but the plaintiffs have alleged in their complaint that Parse was an agent or employee of Deutsche Bank AG and DB Alex. Brown. Because the plaintiffs have conceded the agent/employee status of Parse, Parse can enforce the arbitration agreement – *if* those terms apply, are valid and enforceable. It is to these issues the court now turns.

> *A. The Pending Class Action Bars Parse's Motion to Compel Arbitration.*

Plaintiffs argue that Parse may not seek arbitration because of the existence of the putative class action suit in *Kissell v. Deutsche Bank AG*,[15] currently pending in the Southern District of New York. Plaintiffs claim that the transactions at issue in this case are identical to those in *Kissell*, and also claim that it is undisputed they are all members of the putative class in that suit.

The arbitration clause specifically bars the enforcement of "any pre-dispute arbitration agreement against any person . . . who is a member of a putative class who has not opted out of

---

[13] *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

[14] 181 F.2d 1163 (10th Cir. 1999).

[15] Civil Action No. 06-CV-2405 (S.D.N.Y. Mar. 15, 2006).

the class with respect to any claims encompassed by the punitive class action."[16] This language is drawn directly from the NASD Rules, stating that "any claim filed by a member or members of a putative or certified class action is also ineligible for arbitration at the Association if the claim is encompassed by a putative or certified class action in federal or state court."[17] The NASD Rules also state that "[n]o member or associated person shall seek to enforce any agreement to arbitrate against a customer . . . who . . . is a member of a putative or certified class with respect to any claims encompassed by the class action."[18]

      The *Kissell* class action plaintiffs filed their putative class action on March 15, 2006, five days *after* Parse filed his motion to compel arbitration. At the time Parse sought arbitration, no pending class action suit existed in either state or federal court. Therefore, at the time Parse filed his arbitration motion, he was in full compliance with the arbitration clause in the Account Agreement and NASD Rules. Parse's seeking arbitration *before* the plaintiffs' own counsel filed the *Kissell* class action suit did not void the arbitration clause in the Account Agreement. Since no pending class action suit existed at the time Parse sought arbitration against plaintiffs' claims, Parse could not have violated the arbitration clause or voided the Account Agreement. Therefore, plaintiffs' argument that Parse's motion to compel arbitration voided the Account Agreement is highly unpersuasive.

      Now, however, there is a pending class action suit, and arbitration would not be suitable

---

[16] Account Agreement, ¶ 19.

[17] NASD Rule 10301(2).

[18] NASD Rule 10301(3).

according to the Account Agreement and NASD Rules. Due to the pending class action suit in *Kissell*, the court may not compel arbitration against the plaintiffs at this time. A stay of this litigation pending the outcome of the class certification motion is therefore appropriate. After the class certification decision is made, the plaintiffs will be in a position to decide how they wish to proceed. Therefore, the court stays this litigation until after the Southern District of New York issues its decision on the *Kissell* class certification [#10].

    *B. Arbitration Would be Appropriate if Plaintiffs Proceed in this Court.*

    If plaintiffs decide to proceed before this court, arbitration would be appropriate. Parse first argues that arbitration is appropriate under 9 U.S.C. §§ 201 and 203, which provides that United States courts will enforce the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and confers such jurisdiction to enforce the Convention on this court.[19] Parse's arguments are not persuasive, as the Account Agreements are between U.S. citizens and the transactions do not bear a reasonable relationship to one or more foreign states.[20]

    Alternatively, Parse argues that the arbitration clause is valid and should be enforced in accordance with the governing principles of the FAA. Because the plaintiffs signed the Account Agreements and Parse is a third-party beneficiary of the Account Agreement's arbitration clause, Parse argues he is entitled to force arbitration. The plaintiffs do not dispute that they signed the Account Agreements. They argue, however, that (1) the defendants may not seek arbitration

---

[19] *Mitsubishi Motors Corp.*, 473 U.S. at 619 n.3.

[20] *See, e.g.*, *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992); *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982).

because of the pending class action suit and have therefore voided the Account Agreements by seeking arbitration, (2) the defendants are judicially estopped from seeking arbitration, and (3) a valid agreement to arbitrate does not exist.

The court has already determined that Parse may not force arbitration during the currently pending class certification action in *Kissell*. Parse's motion did not violate the Account Agreements or NASD Rules because no pending class action suit existed at the time he moved to compel arbitration. Plaintiffs argue in the alternative, that Parse previously conceded in other cases that he was prohibited from compelling arbitration under the Account Agreements and NASD rules. Therefore, under "Tenth Circuit or New York law, [plaintiffs argue Parse] should be estopped from taking the position that they have the right to compel arbitration at this time."[21] These arguments stem solely from the fact that a pending class certification suit existed at the time Parse previously took this position before other courts. In each case discussed by the plaintiffs in support of their proposition, a currently pending class action suit existed. Therefore, Parse could not in good faith assert any arbitration of other plaintiffs' claims, and had to admit the inability to enforce the arbitration clause. In this case, however, no pending class action suit existed at the time Parse moved to compel arbitration. Additionally, the factual situations of the cases cited by the plaintiffs, in the hopes of judicially estopping Parse from compelling arbitration, are completely different than this case. Merely because Parse admitted in previous cases – where a class action suit was pending – that he could not enforce arbitration, does not

---

[21] Pla's Memo. in Opp. of Def's Mot. to Compel Arbit., Docket No. 17, at 10 (Apr. 17, 2006).

mean that he is estopped from seeking arbitration in this case.  Accordingly, the plaintiffs' estoppel argument is unpersuasive.

Plaintiffs also argue that a valid agreement to arbitrate does not exist.  They argue that the arbitration provisions are unconscionable.  "While federal policy generally favors arbitration, the obligation to arbitrate nevertheless remains a creature of contract.'"[22]  "[A] written provision for arbitration 'in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[23]  State contract law principles generally govern whether the parties have agreed to arbitrate and whether the agreement is valid.[24]

Plaintiffs do not dispute that they signed the Account Agreements or that they failed to understand these agreements.  They argue, however, that the agreement to arbitrate is unenforceable due to unconscionability.[25]  A showing of unconscionability requires a demonstration that the Account Agreement is "both procedurally and substantively unconscionable when made."[26]  In other words, plaintiffs must offer "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which

---

[22] *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quoting *AT&T Techs., Inc. v. Commu'ns. Workers of Am.*, 475 U.S. 643, 648 (1986)).

[23] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) (quoting § 2 of the U.S. Arbitration Act of 1925, 9 U.S.C. § 2).

[24] *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

[25] *See Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 156 (S.D.N.Y. 2004).

[26] *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. Ct. App. 1988).

are unreasonably favorable to the other party."[27]

Regarding the procedural element, the court must consider "matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was a disparity in bargaining power."[28] New York law specifically states that "the existence of [the arbitration clause] was clearly noted in bold-face print directly above the signature line" and cannot be procedurally deficient on that issue.[29] Additionally, the parties to this transaction have not alleged their experience or education clearly demonstrates procedural unconscionability.

Plaintiffs only real argument on procedural unconscionability is that their "lack of meaningful choice" renders the arbitration clause impotent.[30] They argue that this lack of meaningful choice is "self-evident" because Parse designed the tax shelter strategy and promoted that strategy to plaintiffs. As a result, Parse, as an employee of DB Alex. Brown, required plaintiffs to open up accounts with their brokerage firm and to sign the Account Agreements in order to take advantage of the tax shelter scheme. Of course, plaintiffs did not have to take advantage of the tax shelter scheme; moreover, they could have gone to other brokers to concoct

---

[27] *Id*. (quotations omitted).

[28] *Id*. (quotations omitted).

[29] *Id*. (quotations omitted).

[30] *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449-50 (D.C. Cir. 1965); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1136-37 (D. Kan. 2003); *Gillman*, 534 N.E.2d. at 828.

a similar scheme.  Additionally, plaintiffs "had ample time to review the terms and conditions" and to decide not to engage in the tax shelter scheme "if they did not wish to be bound" by the terms of the arbitration clause.[31]  Finally, it is obvious that the plaintiffs were quite sophisticated investors actively seeking tax shelter opportunities.  Given these facts, plaintiffs' argument that they "lacked meaningful choice" is highly unpersuasive.

Plaintiffs further argue that the arbitration clause is substantively unconscionable because it requires "any controversies" to be arbitrated before the NYSE or NASDR.  The arbitration clause requires arbitration of "any controversies which may arise, whether or not based on events occurring prior to the date of this agreement, including any controversy arising out of or relating to any account with [DB Alex. Brown], to the construction, performance or breach of any agreement with [DB Alex. Brown], or to transactions with or through [DB Alex. Brown]."[32]  Plaintiffs provide no case law supporting the proposition that "broad-based, multi-party scheme[s] to fraudulently design, promote and implement a faulty tax shelter" are not appropriate for arbitration before NYSE or NASDR.[33]  In any event, the claims alleged – including fraud and breach of fiduciary duty – are quintessentially reasonable claims to bring before a NYSE or NASDR arbitration panel.  Those panels are familiar with the services brokers provide to their customers in complex financial transactions of the kind at issue here.  And the fact that the NYSE and NASDR arbitrations are held in accordance with certain rules does not demonstrate

---

[31] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d at 1126, 1136.

[32] Account Agreement, ¶ 19.

[33] Pla's Memo. in Opp., at 13.

substantive unconscionability. The arbitration clause clearly states that arbitrations must be brought before one of these two tribunals, and plaintiffs clearly signed these Account Agreements with that understanding. The court finds that the wide scope of the arbitration clause is not unconscionable, and that the claims brought in this suit fall under the rubric of "any controversies" arising under the Account Agreements.

Plaintiffs request the court consider "other factors" from the Montana Supreme Court's decision in *Kloss v. Edward D. Jones & Co* to find unconscionability.[34] These factors include: (1) whether the potential arbitrators are disproportionately employed in one of the party's field, (2) whether the arbitrators tend to favor "repeat players," (3) the amount of filing fees in the arbitration, and whether they make small claims prohibitive, (4) whether the arbitration proceedings are "shrouded in secrecy," (5) whether the arbitrators are bound by the law or the facts, and (6) whether there is an opportunity to discover facts necessary to prove a claim.[35] These factors do not come close to suggesting unconscionability. Although the NASDR or NYSE arbitration panels undoubtedly use arbitrators from the brokerage field, there has been no showing that such arbitration panels disproportionately favor brokers. Indeed, the success/win rate of 43% in 2005 for plaintiffs may be higher than that in federal courts. And the filing fees of $5,000, while higher than the court's filing fees, do not appear out of line for a general arbitration filing fee, particular given the kind of sophisticated financial transaction at issue here.

In sum, the court finds that the MLDX plaintiffs have failed to demonstrate the invalidity

---

[34] 54 P.3d 1 (Mont. 2002).

[35] *Id*. at 8-9.

of the arbitration clause in the Account Agreement.  Therefore, the court finds that arbitration would be appropriate, if the *Kissell* case were not currently pending in the Southern District of New York.

## CONCLUSION

For the foregoing reasons, the court GRANTS the motion to stay proceedings pending arbitration [#10] and DENIES Parse's motion to compel arbitration without prejudice as premature [#7].  Plaintiffs are ordered to submit a report to this court within fourteen days of the Southern District of New York's class certification decision in *Kissell*.  At that time, plaintiffs are required to inform the court of their intentions to proceed in this case.  If a class is certified in *Kissell,* plaintiffs must determine whether to proceed in this court or to proceed as members of the class in *Kissell*.  If the plaintiffs choose to proceed in this court, the court will at that time GRANT Parse's motion to compel arbitration here [#7].  If, however, the plaintiffs choose to proceed as members of the class in *Kissell*, this action will be dismissed without prejudice.

SO ORDERED.

DATED this 1st day of June, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge